IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| FERNESSA MCCONICO, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 10-AR-0328-S |
| | } | |
| THE CITY OF LEEDS, ALABAMA, et al., | } | |
| | } | |
| | } | |
| Defendants. | } | |

**MEMORANDUM OPINION**

Plaintiff, Fernessa McConico ("McConico") sues defendants, the City of Leeds ("Leeds") and Eric Patterson ("Patterson"), the mayor of Leeds, under 42 U.S.C. § 1983 for alleged violations of her constitutional due process and equal protection rights, and under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), for employment discrimination. Before the court are Patterson's motions to dismiss all claims against him, and Leeds's motions to dismiss all § 1983 claims and some Title VII claims. For the reasons that follow, both Leeds's and Patterson's motions addressing the § 1983 claims will be granted, and Patterson's motion addressing the Title VII claims will be granted, but Leeds's motion addressing the Title VII claims will be denied.

1

**FACTS AND PROCEDURAL HISTORY**[1]

For a case that has only proceeded to the Rule 12(b)(6) stage, this action has produced an exceptional quantity of motions and briefs. McConico filed her initial complaint in the Circuit Court for Jefferson County, Alabama, on January 7, 2010. (Doc. 1 at Ex. A) On February 11, 2010, Leeds removed the action to this court. (Doc. 1). On the same day, Leeds filed its first motion to dismiss pursuant to Rule 12(b)(6). (Doc. 2) At that point, McConico had only alleged § 1983 violations. (Doc. 1 at Ex. A) This court heard oral argument on Leeds's motion to dismiss on February 26, 2010. At the hearing the court determined, among other things, that defendant Patterson had made an appearance in the case, and that he must therefore respond to the complaint. (Doc. 9). On March 3, 2010, McConico amended her complaint, adding a number of factual allegations to support her claims based on race. (Doc. 10). On March 12, 2010, both Leeds and Patterson filed Rule 12(b)(6) motions aimed at McConico's amended complaint. (Docs. 11, 12). On April 16, 2010, this court again heard oral argument on the motions to dismiss. At the second Rule 12(b)(6) hearing, the court discussed with the parties the ramifications of the previously

---

[1] For purposes of a Rule 12(b)(6) motion, the court takes as true the facts alleged in the complaint and draws all reasonable inferences in plaintiffs' favor. *See Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). The complaint's allegations must plausibly suggest a right to relief, raising that right "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient. *Id.*

unmentioned opinion of this court in *Richardson v. City of Leeds*, 990 F. Supp. 1331 (N.D. Ala. 1997), a case having particular relevance to the instant action. Also at the April 16, 2010 hearing, having been informed that McConico had only recently been issued her right to sue from the EEOC, this court granted McConico the right to amend her complaint and add Title VII claims, which she promptly did. (Doc. 21). On April 23, 2010, Leeds and McConico submitted briefs addressing the impact of *Richardson* on the issues in this case. (Docs. 22, 23). Finally, on April 28, 2010, Leeds filed a motion to partially dismiss McConico's Title VII claims, and on April 29, 2010, Patterson filed a separate motion to dismiss McConico's Title VII claims, to the extent she asserted any against him. (Docs. 24, 26). McConico filed a response to defendants new motions on May 7, 2010. (Doc. 27). This court, now having been exhaustively informed of the relevant issues at this stage of the instant action, can finally address the various pending motions.

Fernessa McConico is a black female, and was employed by the City of Leeds for more than ten (10) years, mostly serving as a Court Clerk/Magistrate in the Municipal Court. (Am. Compl. ¶ 6). McConico alleges that during her tenure as an employee, she was treated differently than white employees, often being asked to take on extra responsibilities or work odd hours while the white employees were not. *Id.* at ¶ 15(5),(6),(7). McConico also claims that she and other black employees were paid less than white

employees performing the same job duties. *Id.* at 15(10). McConico filed a charge with the EEOC over the alleged disparate treatment on August 19, 2008. On September 11, 2009, McConico was terminated for allegedly failing to properly account for funds of the City of Leeds Municipal Court. *Id.* at ¶ 5. McConico contends that she never mishandled or misappropriated funds. *Id.* at ¶ 15(1). She further alleges that other, white employees, did mishandle or mismanage the funds, but suffered no adverse employment consequences, and in fact McConico's termination was an effort to "cover up and protect white employees". *Id.* at 15(2),(3). After McConico was terminated, Patterson made public statements inferring that McConico had misapplied or misappropriated funds. *Id* at ¶ 15(13). Some of these statements were published in the Birmingham News. *Id.* McConico claims that the Leeds City Council never assented to her termination, and that her termination was never reviewed by the Jefferson County Personnel Board. *Id* at ¶ 7, 15(11),(12). Finally, McConico alleges that she was replaced by a white employee, and that the white employee currently occupying her former job has stated that no black person will be hired to the position of clerk/magistrate. *Id.* at ¶ 15(4).

## DISCUSSION

In her amended complaint, McConico alleges that defendants violated 42 U.S.C. § 1981, 42 U.S.C. § 1983, the First Amendment to the United States Contitution, and Title VII. McConico has since

abandoned any claims under § 1981, conceding that it does not afford a cause of action. (Doc. 13 at 9). McConico has similarly abandoned any § 1983 claim based on sex, and any claim based on the First Amendment. *Id.* at 9-10. Finally, McConico has abandoned any Title VII claim she may have asserted against Patterson. (Doc. 27 at 8). Remaining are McConico's equal protection and due process claims under the Fifth and Fourteenth Amendments, asserted via § 1983, against both Leeds and Patterson, and her related Title VII claims asserted only against Leeds. The court will first examine the § 1983 claims.

McConico makes three claims under § 1983, (1) that Patterson's termination decision violated the equal protection clause, and that his decision was attributable to the City of Leeds, (2) that Patterson violated her substantive due process right to liberty by publicly making false accusations against her, and that Patterson's actions again can be attributed to the City of Leeds, and (3) that Patterson and/or the City of Leeds violated her procedural due process rights by preventing or interfering with her constitutionally required notice and opportunity to be heard. (Doc. 10).

**Equal Protection**

To assert an equal protection claim against Leeds, McConico must first plausibly allege facts to support a theory of municipal liability based on Patterson's actions. Municipalities may not be

held liable for alleged § 1983 violations under a traditional *respondeat superior* theory. *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978). Rather, municipalities may only be held liable for a municipal employee's alleged violation of another's constitutional rights when the employee's actions are in "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. In other words, for a municipality to be held liable, its employees actions must be in accordance with a governmental.

Attempting to survive Leeds's challenge based on *Monell*, McConico points to *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S. Ct. 1292 (1986), in which the Supreme Court carved out an apparent exception to the "custom or policy" requirement of *Monell*. In *Pembaur*, the Supreme Court held the action of a "final decisionmaker", even if "tailored to a particular situation and not intended to control decisions in later situations", may give rise to municipal liability if "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered". *Id.* at 481. Thus, under *Pembaur*, a municipality can be held liable even when no custom or policy exists if the person taking the complained of action is the municipal policymaker with respect to that type of decision. *Id.* McConico points to § 11-43-81 of the Code of Alabama as evidence that Patterson was the "final

6

decisionmaker" and thus can subject Leeds to liability for his actions. (Doc. 13 at 6; Doc. 22 at 4). The cited Code section provides that the mayor has the power to appoint and/or terminate all municipal officers whose appointment is not otherwise provided for by statute. (Doc. 13 at 6).

McConico's attempted reliance on *Pembaur* is misplaced. As this court explained when it examined a similar argument in *Richardson v. City of Leeds*, 990 F. Supp. 1331 (N.D. Al. 1997), the Supreme Court "intended drastically to narrow the *Pembaur* opening" in the case of *Board of County Commissioners of Bryan County, Okla. v. Brown*, 520 U.S. 397, 117 S.Ct. 1382 (1997). In *Board of County Commissioners*, the Court held that "[t]o the extent that we have recognized a cause of action under § 1983 based on a single decision attributable to a municipality, we have done so only where the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation." *Id* at 398. The Court goes on to explain that the cases where this unique situation was found "involved formal decisions of municipal legislative bodies," so that "each decision, duly promulgated by city lawmakers, could trigger municipal liability if the decision itself were found to be unconstitutional." *Id.* While Patterson may make decisions concerning employment termination, he does not dictate municipal policy or law. Thus, proving that his employment decision constituted a deprivation of constitutional

rights does not automatically prove fault and causation on the part of the municipality, and McConico cannot squeeze through the *Pembaur* opening as narrowed by *Board of County Commissioners*.

Even if McConico's equal protection claim against Leeds were to survive the rather nuanced barrier erected by *Monell* and *Board of County Commissioners*, it would fail for a more obvious reason, namely, the fact that Patterson's termination decision was subject to administrative review. It has long been established "that a municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (citing *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 638 (11th Cir. 1991)). As explained by this court in *Vincent v. City of Talladega,* 980 F. Supp. 410, 418 (N.D. Al. 1997), "if there is a review board with the power to take another look at the decision, the employee can forget about suing the city under § 1983."). In her amended complaint, McConico claims that either the Leeds city council or the Jefferson County Personnel Board had the authority to review her termination. (Doc. 10 at 2, 9-10). Taken as true, this fact requires the dismissal of McConico's equal protection claim asserted against Leeds.

McConico's equal protection claim asserted against Patterson faces its own set of challenges. Principal among these challenges is Patterson's claim to qualified immunity. Under the doctrine of

qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). It is undisputed that Patterson was performing a discretionary function when he terminated McConico. Once the defendant establishes the discretionary function criterion, the burden then shifts "to the plaintiff to show, in general and preferably, two things: first, that the defendant violated a constitutional right and, second, that the right was clearly established at the time." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004). It is not enough for a plaintiff to point to a recognized constitutional right, such as equal protection of the laws, and cry "foul". Rather, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001). In other words, "if objective observers cannot predict-at the time the official acts-whether the act was lawful or not, and the answer must await full adjudication in a district court years in the future, the official deserves immunity from liability for civil damages." *Foy v. Holston*, 94 F.3d 1528, 1534 (11th Cir. 1996). In the instant action, no objective observer could conclude, at the

time of the act, that Patterson's decision violated the equal protection clause. Patterson gave an objectively legitimate reason for the employment decision, that is, that McConico mishandled or misappropriated funds. Without subjective proof of Patterson's thought processes, no reasonable official could conclude that Patterson was violating an established constitutional right. Therefore, Patterson is entitled to qualified immunity, and McConico's equal protection claim against him will be dismissed.

**Due Process**

As discussed above, McConico alleges that she was entitled to a hearing regarding her termination from either the Leeds City Council or the Jefferson County Personnel Board regarding her termination. She further claims that the defendants never advised her of her right to a hearing. (Doc. 10 at 15(12)). While McConico may well have been entitled to a hearing and notice of said hearing, she cannot allege a procedural due process violation under the 14th Amendment because the state of Alabama provides a means to remedy the alleged procedural deprivation, namely, state court review. In *McKinney v. Pate*, 20 F.3d 1550, (11th Cir. 1994), a case involving a similar issue in the state of Florida, the Eleventh Circuit held that an employee "has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation." *Id.* at 1563. The Eleventh Circuit went on to hold that state court

review of employment termination was sufficient to satisfy due process requirements. *Id.* Because Alabama allows for state court review of employment decisions for alleged due process violations, the Eleventh Circuit has applied the reasoning from *McKinney* to procedural due process claims in Alabama, and has reached the same result. *See Reams v. Irvin*, 561 F.3d 1258, 1266 (11th Cir. 2009); *Bell v. City of Demopolis*, 86 F.3d 191 (11th Cir. 1996). Therefore, McConico has failed to state a claim for a procedural due process violation.

McConico alleges that Patterson and Leeds violated her substantive due process right to liberty by making "false accusations in the Birmingham News inferring that [McConico] misapplied, mishandled, misappropriated, or otherwise committed acts of financial irregularities, stigmatizing [McConico] and impairing her future employment." (Doc. 13 at 8-9). McConico cannot advance a legitimate argument that Leeds has a custom or policy of violating its employees' liberty interests through defamatory statements. Therefore, any attempt to hold Leeds liable for Patterson's conduct fails under *Monell* and its progeny. Furthermore, McConico's claim based on Patterson's statements is mis-characterized. "[W]hen reputational damage is sustained in connection with a termination of employment, it may give rise to a **procedural** due process claim for deprivation of liberty which is actionable under Section 1983." *Cotton v. Jackson*, 216 F.3d 1328,

1330 (11th Cir. 2000)(emphasis added); *See also Paul v. Davis*, 424 U.S. 693, 708, 96 S.Ct. 1155 (1976); *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301-02 (11th Cir. 2001); *Bank of Jackson County v. Cherry*, 980 F.2d 1354, 1357 (11th Cir. 1992). Thus, if McConico has any claim based on her liberty interest, it is one of procedural due process. In *Cannon*, the Eleventh Circuit set out the elements a plaintiff must plead, and ultimately prove, to succeed on a due process claim related to a public employee's liberty interest:

> In order to establish that a deprivation of a public employee's liberty interest has occurred without the due process of law, the employee must prove that: (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) was made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing."

*Cannon*, 250 F.3d 1299, 1301 (citing *Buxton v. City of Plant City*, 871 F.2d 1037, 1042-43 (11th Cir. 1989)). As explained above, because Alabama provides state court review for challenging terminations, McConico has failed to plead element (6), and any claim based on violation of due process connected to her liberty interest must be dismissed.

**Title VII**

As previously noted, McConico has abandoned any Title VII claim asserted against Patterson, and any Title VII claim based on sex asserted against Leeds. (Doc. 27 at 2, 8). Remaining is McConico's Title VII claim against Leeds based on race

discrimination. Leeds moves to dismiss any Title VII claim based on McConico's termination and any claims based on events that occurred more than 180 days before McConico filed her EEOC charge. (Doc. 24).

McConico filed her EEOC charge of discrimination on August 19, 2008. (Doc. 21 at Ex. B). This initial charge complained of disparate treatment in the workplace. *Id.* McConico was ultimately terminated on September 11, 2009, approximately thirteen (13) months after filing her initial charge. (Doc. 24-1 at 2). On September 30, 2009, McConico's counsel notified the EEOC investigator that she had been terminated, but did not file a new charge or formally amend her old charge. (Doc. 27 at 11-13). On March 31, 2010, the EEOC issued its notice of right to sue, and on April 16, 2010, McConico amended her complaint to include claims under Title VII.

Leeds argues that McConico's discharge was a discrete act, and that because McConico never amended her original EEOC charge nor filed a new, separate charge, she has failed to exhaust her administrative remedies regarding her termination. (Doc. 24 at 6-7). Leeds's argument fails because examination of McConico's discharge constituted part of the EEOC's investigation. McConico brought her termination to the attention of the EEOC investigator six (6) months before the EEOC issued its right to sue notice. To the extent McConico's e-mail did not actually amend her original

charge to include a claim based on her discharge, the said claim was within the reasonable scope of the investigation of the initial charge. As explained in *Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112 (5th Cir. Unit B 1981), courts have "adopt[ed] a rule of reason which permits the scope of a Title VII suit to extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Id.* at 1123. This court finds that it would violate any rule, if such rule is based on reason, to require McConico to go back to the EEOC with a new charge based on her termination, await another right to sue notice, and then file another, separate, claim in federal court. This court finds such a process especially unreasonable in light of the fact that McConico notified the EEOC of her termination six months prior to its issuance of the notice of her right to sue. Therefore, McConico's Title VII claims based on her termination will survive Leeds's Rule 12(b)(6) motion.

Leeds also argues that any complained of conduct that occurred before February 19, 2008, because such acts would have occurred more than 180 days before McConico filed her EEOC charge on August 19, 2008. (Doc. 24 at 8). McConico contends that such claims should not be dismissed at this time, because she has stated a cause of action for hostile work environment. (Doc. 27 at 6-7). "[A]s long as 'an act contributing to [a] hostile work environment claim occurs within the filing period, the entire time period of

the hostile environment may be considered by the court.'" *McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008)(quoting *National R.R. Passenger Corp v. Morgan*, 536 U.S. 101 (2002)). Although the first place McConico uses the phrase "hostile work environment" is in her response to defendant's Rule 12(b)(6) motion, this court can cull enough facts from her amended complaint regarding such a claim to survive Rule 12(b)(6) as interpreted by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, (2007), and *Ashcroft v. Iqbal*,---- U.S. ----, 129 S.Ct. 1937 (2009). Whether or not any of the incidents occurring before February 19, 2008, are sufficiently related to those that may have occurred later, thus forming part of the same claim, is an inquiry that can be taken up again under Rule 56, should Leeds choose to later file a motion under that Rule.

## CONCLUSION

McConico has failed to plausibly state a claim upon which relief can be granted against any defendant under 42 U.S.C. § 1983. She has abandoned any claims she may have erroneously asserted under 42 U.S.C. 1981 or the First Amendment, as well as any claims based on gender. She has also abandoned any claims against Patterson under Title VII. McConico's only valid claims are race-based allegations against Leeds under Title VII, and these are the only claims that will survive defendants' Rule 12(b)(6) motions. All of McConico's claims asserted against Patterson will be dismissed with prejudice by separate order. All of her claims

asserted against Leeds, except for her Title VII claims based on race, will also be dismissed. The court having whittled McConico's complaint, initially filed more than four months ago, down to its only actionable claims, Leeds, the only remaining defendant, may finally file an answer.

DONE this 17th day of May, 2010

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE